UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **ANGELIA JOHNSON** | **CIV. ACTION NO. 3:22-00898** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **TRUETT ENTERPRISES, INC. ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions: (1) a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 8] filed by Defendants, Truett Enterprises, Inc. and Sincere Health Care Services, Inc.; and (2) a motion for leave to file a second amended complaint [doc. # 11] filed by Plaintiff Angelia Johnson. For reasons explained below, the motion for leave to amend [doc. # 11] is GRANTED, and it is recommended that the motion to dismiss [doc. # 8] be GRANTED IN PART and DENIED IN PART.

## Background

On April 4, 2022, Angelia Johnson ("Johnson") filed the instant civil rights complaint against her former joint employer(s), Truett Enterprises, Inc. d/b/a Best Home Health ("BHH"); National Homecare Services; and Best Home Health. (Compl.). On July 26, 2022, Johnson amended her complaint to substitute Sincere Health Care Services, Inc. d/b/a National Homecare Services ("NHS") as Defendant in lieu of the improperly named National Homecare Services and Best Home Health. (1st Amend. Compl. [doc. # 6]). In other words, following the amendment, there were two Defendants, BHH and NHS (collectively, "BHH/NHS"). In response to BHH/NHS's motion to dismiss, *see* discussion, *infra*, Johnson filed an unopposed

motion for leave to file a second amended complaint, which is granted below.  *See* discussion, *infra*.  Therefore, the operative complaint for purposes of the motion to dismiss is the Second Amended Complaint ("SAC") [doc. # 11-2].[1]

Johnson, who is an African American female, worked for BHH/NHS as a biller at its Ruston, Louisiana location from October 19, 2019, until her discharge on April 16, 2021.  (SAC, ¶¶ 6, 15).  Johnson's duties included medical billing for services rendered by the home health agency.  (SAC, ¶ 6).  At the time of her hire, Johnson was the only biller in the office and the only African American employed at that office.  *Id*.  Johnson contends that, during the course of her employment, and even more so after her return from a three-month leave of absence to recover from COVID-19, she was subjected to discrimination and a hostile work environment on the basis of race.  *Id*., ¶¶ 7-10.

As a precursor to this suit, Johnson filed a charge with the Equal Opportunity Commission ("EEOC") in 2021 and received a right to sue letter on or about January 5, 2022.  (SAC, ¶ 4).  In her operative complaint, Johnson asserted claims for race and color discrimination in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; and 42 U.S.C. § 1981.  *Id*., ¶ 1.  She also invoked the court's supplemental jurisdiction to consider her claims under state law.  *Id*.  Specifically, the SAC includes three counts:  1) hostile work environment in violation of federal law; 2) discriminatory discharge in

---

[1] An "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)).  Here, the SAC does not adopt or incorporate the earlier iterations of the complaint.

violation of federal law; and 3) a state law claim for intentional infliction of emotional distress. *Id*., ¶¶ 17-25. Johnson seeks an award of compensatory and punitive damages for mental distress, humiliation, past and future embarrassment, and past and future lost income. *Id.*; Prayer. Should she prevail, she also seeks an award of attorney's fees. *Id*. Finally, Johnson requests declaratory and injunctive relief. *Id*.

On July 26, 2022, BHH/NHS filed the instant Rule 12(b)(6) motion to dismiss all three counts of Johnson's complaint, as amended. [doc. # 8]. In response, Johnson filed the instant motion for leave to file her second amended complaint on August 17, 2022. [doc. # 11]. She also contemporaneously filed her opposition to the motion to dismiss. [doc. # 12]. On August 24, 2022, BHH/NHS filed its reply in support of the motion to dismiss. [doc. # 14]. Accordingly, the matter is ripe.

## **Leave to Amend**

Johnson's motion for leave to file her second amended complaint is unopposed. (BHH/NHS Reply Brief, pg. 1 n.1 [doc. # 14]). Considering the lack of opposition,[2] the motion is GRANTED.[3]

Moreover, when a plaintiff amends her complaint while a motion to dismiss is pending, and defendants maintain that the defects raised in the original motion are not cured by the new

---

[2] Leave to amend shall be "freely [granted] when justice so requires." FED. R. CIV. P. 15(a)(2). Moreover, a district court must have a "substantial reason" to deny a request for leave to amend. *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (citation omitted).

[3] As this matter is not excepted within 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this order is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1.

pleading, then the court may consider the motion to dismiss as being addressed to the amended pleading. As the Fifth Circuit has explained,

> defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. Rather, [i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.

*Rountree v. Dyson,* 892 F.3d 681, 683–84 (5th Cir. 2018) (citations and internal quotation marks omitted).

In this case, BHH/NHS contends that the SAC adds nothing of substance to Johnson's First Amended Complaint and that it fails to rebut the bases for its motion to dismiss. (BHH/NHS Reply Brief, pg. 5 [doc. # 14]). Accordingly, the court will consider BHH/NHS's pending motion to dismiss as being addressed towards the SAC. *Rountree, supra*.

## Rule 12(b)(6) Principles

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a

4

reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

"[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a Rule 12(b)(6) motion. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 997 (2002); *see also Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). The Supreme Court explained that the *McDonnell Douglas* framework[4] "is an evidentiary standard, not a pleading requirement." *Id.* at 510, 122 S.Ct. 992, 997.[5] Accordingly, a plaintiff's complaint need only comply with Rule 8, which requires no more than "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8; *Swierkiewicz*, 423 U.S. at 515, 122 S.Ct. 992.

However, the Fifth Circuit maintains that the prima facie standard *is* relevant at the motion to dismiss stage at least in the sense that a plaintiff is obliged to plead facts as to each of the ultimate *elements* of her claim sufficient to render the case plausible. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). In other words, it may be helpful to reference the *McDonnell Douglas* framework on which plaintiff must rely if she bases her claim on circumstantial evidence. *Id.* Nonetheless, *McDonnell Douglas* is not dispositive at the pleading stage because it may not even apply if discovery reveals direct evidence of discrimination. *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1212 (5th Cir. 2021), *as revised* (Nov. 26, 2021).

More recently, the Supreme Court has clarified that "*McDonnell Douglas* can provide no basis for allowing a complaint to survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, ___

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

[5] Furthermore, *Twombly* did not overrule *Swierkiewicz. See Twombly*, 550 U.S. at 569-70, 127 S.Ct. 1955.

U.S. ___, 140 S.Ct. 1009, 1019 (2020). Moreover, "the essential elements of a claim remain constant through the life of a lawsuit." *Id*. Therefore, a claim under 42 U.S.C. § 1981 follows the general rule that a "plaintiff must demonstrate that, but for the defendant's unlawful conduct, [her] alleged injury would not have occurred." *Id*. Although the *McDonnell Douglas* framework arose at a time when but-for causation was the undisputed test, a plaintiff still must set forth facts to support the essential elements of her claim to survive a motion to dismiss. *Id*.

### Johnson's Allegations

On August 12, 2020, an officer manager told Johnson that a coworker had tested positive for COVID-19 two days earlier. (Compl., ¶ 8). However, "[o]ther white co-employees were told immediately and much sooner about the positive test." *Id*. Johnson asked for time off from work to go get tested, but Jennifer, a white office manager, advised her that she did not need to be tested if she had no symptoms and refused to permit Johnson to be tested on company time. *Id*.

Johnson nonetheless obtained a test on her own time, and promptly tested positive, along with her family. *Id*., ¶ 9. Accordingly, Johnson took leave so she could quarantine. *Id*. She remained on leave with COVID-19 for roughly three months until November 2020. *Id*., ¶ 10. During this period, her mother passed away from COVID-19. *Id*. While on leave, another biller, Fran, a white female who had been discharged from the Minden location, filled in for Johnson. *Id*., ¶ 11. Johnson's supervisor attempted to dissuade Johnson from returning to work. *Id*.

Johnson did return to work, but, when she did, she discovered that her work area had been relocated to the rear of the office away from patient's charts, in violation of office practices. *Id*., ¶ 11. She also did not have a telephone at her new work desk. *Id*. When she requested a

telephone, she was advised that the IT engineer was on vacation. *Id.*, ¶ 12. Her new desk location also was very cold, and Johnson had to bring her own heater to stay warm at work. *Id*.

On many occasions, even before her three-month long COVID-19 "quarantine," office staff would go out to lunch, but not include Johnson. *Id.*, ¶ 13. During the Christmas tree decoration celebration, supervisors informed staff that they could stop work and help with the decorations. *Id*. Johnson, however, was excluded from this fun activity. *Id*.

When a Caucasian co-worker, Lisa Anderson's mother passed away, office staff provided her with gifts of love and encouragement. *Id.*, ¶ 14. However, when Johnson's mother passed away, her white co-workers provided her with no similar condolences, not so much as a telephone call. *Id*.

White office employees also repeatedly looked at Johnson with disgust, for no apparent reason. *Id.*, ¶ 13. When white people would enter the office, they were warmly greeted. *Id*. Conversely, when Johnson or other black people entered, there was no greeting at all. *Id*. In fact, when Johnson's counselor, who is African American, visited the office in 2019, she immediately sensed the racial hostility in the air. *Id*.

A BHH/NHS employee from another location told Johnson that the office staff where Johnson worked held racial prejudice against her and wanted to make the work environment such that she would quit. *Id.*, ¶ 16. A BHH/NHS employee also told Johnson that her officemates had expressed racial animosity towards Johnson. *Id*.

On April 16, 2021, BHH/NNS discharged Johnson for poor job performance. *Id.*, ¶ 15. However, Johnson's evaluation from February 2021 indicated that her performance had been average to above average and even exceptional in one category. *Id*. Johnson did not receive any

8

write-ups or counseling prior to her discharge. *Id*. Johnson was replaced by the same white female, Fran, who had filled in for her while she was on sick leave. *Id*.

### Analysis

Title VII prohibits an employer from, *inter alia*, discriminating against any individual with respect to compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Furthermore, the Supreme Court has held that Title VII proscribes the maintenance of "a discriminatorily hostile or abusive environment." *Matherne v. Ruba Mgmt.*, 624 Fed. App'x. 835, 839 (5th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Similarly, § 1981 provides that

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a)-(b). Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459–60; 95 S.Ct. 1716, 1720 (1975).[6]

---

[6] Even an at-will employee stands in a contractual relationship with her employer and thus may maintain a cause of action under § 1981. *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*,

Broadly speaking, the "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 . . . and Title VII." *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (citing, *inter alia*, *Wallace v. Tex. Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996)). Indeed, "[w]hen used as parallel causes of action, Title VII and [S]ection 1981 require the same proof to establish liability . . ." *Outley v. Luke & Associates, Inc.*, 840 F.3d 212, 220 n.3 (5th Cir. 2016) (citation omitted); *see also Chen v. Ochsner Clinic Found.*, 630 Fed. App'x. 218, 227 (5th Cir. 2015) (analysis of employment discrimination claims under Title VII and § 1981 is identical); *DeGrate v. City of Monroe*, No. 15-2641, 2017 WL 421673, at *4 (W.D. La. Jan. 30, 2017).

"Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (quoted source omitted). Thus, "[t]o succeed on a claim of intentional discrimination under Title VII . . . or Section 1981, a plaintiff must first prove a *prima facie* case of discrimination" by either direct or circumstantial evidence. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted); *Jones v. Hosemann*, 812 Fed. App'x. 235, 238 (5th Cir. 2020) (citing *Lee v. Conecuh Cty. Bd. of Ed.*, 634 F.2d 959, 961–62 (5th Cir. 1981)); *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997) ("plaintiff may establish a *prima facie* case by direct evidence or, more commonly, by circumstantial evidence of discriminatory motive").[7]

---

160 F.3d 1048, 1050 (5th Cir. 1998).

[7] A plaintiff "may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

10

"Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1217 (5th Cir. 1995). "[S]tatements or documents which show on its face that an improper criterion served as a basis-not necessarily the sole basis, but a basis-for the adverse employment action are direct evidence of discrimination." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005). However, when a case is prosecuted on the basis of circumstantial evidence, the courts employ the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973).

As stated above, Johnson asserted claims under Title VII and § 1981 for hostile work environment and discriminatory discharge, plus a state law claim for intentional infliction of emotional distress. BHH/NHS maintain that Johnson fails to state a claim for relief.[8] The court will address the claims, in turn.

a)  Hostile Work Environment/Harassment

A hostile work environment is present when the "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367 (1993)).[9] To establish a hostile work environment claim under Title VII,

---

[8] BHH/NHS also argued that Johnson failed to set forth any facts to support discrimination on the basis of her national origin. However, Johnson conceded that she has no claim for national origin discrimination and voluntarily dismissed the claim in the SAC. *See* Pl. Opp. Brief, pg. 1 n.1.

[9] Citing *Raj v. Louisiana State University*, BHH/NHS argues that Johnson's hostile work environment claim requires her to show that the employer created "a working environment

11

plaintiff must demonstrate that she

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations omitted).

BHH/NHS contends that Johnson failed to set forth any facts to show that it took any adverse action against her on the basis of her race or color. It also argues that Johnson did not allege "that [s]he was treated less favorably than others *outside of h[er] protected class*." *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021), *cert. denied* ___U.S. ___; 142 S.Ct. 713 (2021).

Analyzing the sufficiency of Johnson's hostile work environment within the parameters of the elements of her claim, the court observes that Johnson alleged that she is African American, and, thus, a member of a protected group. She also alleged that she experienced unwelcome harassment or treatment that no other white person in the office was subjected to. In fact, a BHH/NHS employee confirmed that the conduct was racially motivated. Furthermore, the office manager herself participated in the racial hostility, which, was open and obvious. (SAC, ¶ 16). Consequently, the lone remaining question is whether Johnson alleged facts to show that the harassment was sufficiently severe or pervasive enough to affect a term, condition, or

---

*heavily charged* with . . . discrimination. *Raj*, 714 F.3d at 330–31 (citing *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971)) (emphasis added). In 1993, however, the Supreme Court explained that the harassment must be so "severe or pervasive" as to alter the conditions of employment. *Harris, supra*. The Supreme Court later reiterated that, to amount to a change in the terms and conditions of employment, the conduct at issue must be "extreme." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788; 118 S.Ct. 2275, 2284 (1998).

privilege of employment.

In assessing whether harassing conduct is sufficiently severe or pervasive to affect a term, condition, or privilege of employment depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" or workplace competence." *Peterson v. Linear Controls, Inc.*, 757 Fed. App'x. 370, 374 (5th Cir. 2019) (citations omitted); *Hernandez, supra*; *West v. City of Houston, Texas*, 960 F.3d 736, 742 (5th Cir. 2020). In other words, a subjective belief of racial motivation, without more, is insufficient to show a hostile work environment. *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed. App'x. 104, 107 (5th Cir. 2009). A one-time use of a racial epithet does not establish a hostile work environment. *See Peterson, supra* (citation omitted). Even an occasional racially insensitive joke is insufficient. *West, supra.*

Moreover, "[i]solated incidents do not support a hostile work environment claim unless the complained-of incident is 'extremely serious' in nature." *Higgins v. Lufkin Indus., Inc.*, 633 Fed. App'x. 229, 235 (5th Cir. 2015) (citations omitted). Thus, "[d]iscourtesy or rudeness, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999) (citations and internal quotation marks omitted). In short, Title VII is not a general civility code for the American workplace. *West*, 960 F.3d at 743.

Applying the foregoing considerations here, the court finds that the workplace conduct Johnson experienced was not physically threatening or particularly humiliating. Rather, the conduct highlighted by Johnson appears to have been hurtful and intended to make her feel

unwanted. While the absence of greetings, repeated looks of disgust, work desk relocation, and whites-only lunch outings were ongoing issues, the Christmas tree decoration snub, the new telephone delay, the failure to convey condolences on the passing of Johnson's mother (while she was on a leave of absence), and the COVID-19 notification delay were isolated instances.[10] To be sure, the court recognizes how Johnson might find it difficult to concentrate at work under the foregoing conditions. However, the conduct apparently did not "unreasonably interfere" with Johnson's work performance or competence because, according to Johnson, her performance remained average or above. (SAC, ¶ 15).

A recent, albeit unpublished, Fifth Circuit decision also guides the court's present analysis. In *Montgomery-Smith v. George*, the plaintiff complained of repeated denials of promotion, combined with the following incidents:

> (1) [a coworker] laughed and glared at [plaintiff] each time she was denied a promotion; (2) [plaintiff's] office was moved from the sixth floor to the fourth; (3) [plaintiff] was not invited to the 2017 Thanksgiving luncheon; (4) [plaintiff] was not asked to participate in the office's "Pink Day;" (5) [plaintiff] was isolated from her coworkers; and (6) other employees were instructed not to talk to [plaintiff].

*Montgomery-Smith v. George*, 810 Fed. App'x. 252, 259 (5th Cir. 2020). The Fifth Circuit, however, concluded that these incidents did not amount to the type of "extreme" conduct the Supreme Court requires to set forth a hostile work environment claim. *Id*. The court specifically noted that claims of isolation and ostracism do not suffice to support a hostile work environment claim. *Id*.

---

[10] Johnson speculates that if she had received a timely warning about her COVID-19-infected co-employee, she might have been able to avoid contact with him. However, considering that Johnson quarantined as soon as she tested positive for COVID-19, it is difficult to fathom that, at the height of the pandemic, the office manager would have permitted the co-employee to continue working after he notified the manager that he had tested positive.

Johnson's allegations are not meaningfully or qualitatively different than those found to be insufficient in *Montgomery-Smith, supra*, which necessarily compels the same result here.[11]

b) <u>Discriminatory Discharge</u>

To establish a prima facie case of race-based discrimination, a plaintiff must show that she "(1) is a member of a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class." *Melvin v. Barr Roofing Co.*, 806 Fed. App'x. 301, 305 (5th Cir. 2020) (quoting *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)); *McCoy*, 492 F.3d at 556. Similarly, to prevail on a § 1981 claim, the plaintiff must show that "(1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute . . ." *Bellows, supra* (citation omitted).

Johnson is African American, and thus, belongs to a protected class. She further alleged that she executed her job duties well and that her performance scores were average or higher. (SAC, ¶ 15). Moreover, the fact that BHH/NHS hired Johnson suffices to show, at the pleading stage, that she was qualified for the position. *See Berquist v. Washington Mut. Bank*, 500 F.3d 344, 350 (5th Cir. 2007) (where plaintiff possesses the same job qualification at the time that she

---

[11] In *Huckaby v. Moore*, the Fifth Circuit found that plaintiff had a viable hostile work environment claim where he was constantly ribbed and harassed by coworkers for "being white," and where he was required to attend a meeting and to stand out in the rain whilst no blacks were made to do so. *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir. 1998) *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Here, however, Johnson was not subjected to broadcasted statements or constant ribbing and harassment for being black.

suffered the adverse employment action as when her employer placed her in that position, then she need not otherwise show that she was qualified); *Singleton v. Town of Vidalia*, Civ. Action No. 10-0163, 2011 WL 4591064, at *2 (W.D. La. Sept. 30, 2011) (defendant hired plaintiffs to work in the town's newly created position and, thus, plaintiffs are presumed to be technically "qualified" for the positions); *Roby v. Frontier Enterprises, Inc.*, Civ. Action No. 11-368, 2012 WL 4321312, at *2 (W.D. Tex. Sept. 19, 2012) (plaintiff was hired and, thus, presumably qualified for the position); *Valles v. Frazier*, Civ. Action No. 08-501, 2009 WL 3617534, at *3 (W.D. Tex. Oct. 27, 2009), *clarified on denial of reconsideration,* 2009 WL 4639679 (W.D. Tex. Nov. 30, 2009) (although not pled in the complaint, it is reasonable to infer that plaintiff was qualified for her position because, *inter alia*, defendant hired her for the position).

Johnson also alleged that BHH/NHS discharged her from employment, which clearly constitutes an adverse employment action. In addition, she was replaced by a white female, i.e., someone outside her class. Finally, Johnson set forth facts to show that BHH/NHS's purported rationale for her discharge was false. In sum, Johnson has alleged a plausible claim for race-based discrimination.

c)      <u>Intentional Infliction of Emotional Distress</u>

To recover on a claim for intentional infliction of emotional distress ("IIED") under Louisiana law,[12] a plaintiff must establish

---

[12] All parties analyzed Plaintiff's IIED claim pursuant to Louisiana law. Therefore, they implicitly agree that the disputed issues are governed by the substantive law of Louisiana. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied). To determine Louisiana law, federal courts look to the final decisions of the Louisiana Supreme Court. *Moore v. State Farm Fire & Casualty Co.*,

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*White v. Monsanto, Co.,* 585 So.2d 1205, 1209 (La. 1991) (citations omitted). The conduct prohibited by the IIED tort is

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, some safety valve must be left through which irascible tempers may blow off relatively harmless steam . . .

*Id.* (citations omitted).

Furthermore, "[d]isciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable." *Id*. Rather, an IIED claim in the workplace typically is "limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Id*. Moreover, conduct which is "merely tortious or illegal" does not suffice. *Schmidt v. Cal-Dive Int'l, Inc.*, 240 F. Supp.3d 532, 552 (W.D. La. 2017) (citing *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1024-25 (La. 2000)).

In *Nicholas v. Allstate Ins. Co.*, the Louisiana Supreme Court surveyed case law and catalogued the following instances of offensive and inappropriate conduct that did not rise to the requisite level to support an IIED claim:

- wrongful demotion and transfer of a teacher within the school system, even though it caused emotional and psychological distress;

---

556 F.3d 264, 269 (5th Cir. 2009) (citation omitted).

- supervisor maintained two-year-long harassment in which he questioned the worker's personal life, increased the workload, and pressured the employee to accept a demotion which ultimately led to the employee's termination;

- even if the employee felt singled out for abuse, a supervisor's eight-month undertaking in which he shouted at an employee, cursed her, called her names (dumb, stupid, and fat), commented about the inferiority of women, and falsely accused her of making mistakes;

- employer called upon employee to do more than others, used special review on particular employees and not others to downgrade performance, instituted long term plan to move younger persons into sales and management positions;

- employer's use of a security team to ridicule, tease, and taunt plaintiff for seven and one-half hours questioning; and

- telling an employee that she was rumored to have had a sexual affair with a prior scout executive, being told that her placement next to a donor who liked her was because she might get more money from him, communication to her that he did not want a woman in her position, being called a total disgrace in a staffing meeting after she successfully completed her probationary period, and being told that she would be terminated on an undisclosed volunteer complaint unless she voluntarily resigned.

*Nicholas, supra* (citations omitted).

This court already has determined that BHH/NHS's conduct did not amount to the type of "extreme" conduct that is necessary to support a hostile work environment claim. *See* discussion, *supra*. Moreover, while the actions of BHS/NHS's employees may be characterized as mean, insensitive, or even cruel, they are not so outrageous as to be regarded as atrocious and utterly intolerable in a civilized community. After all, many persons, whether employees, students, parishioners, or teammates suffer many of the same acts of unkindness and exclusion on a daily, ongoing basis for reasons other than a protected characteristic. As far as this court is aware, the Louisiana Supreme Court has yet to convert this type of conduct into an IIED claim, simply because it stems from unlawful animus.

18

Accordingly, the court finds that Johnson's allegations do not suffice to confer plausibility upon her claim for intentional infliction of emotional distress. *See Jenkins v. Louisiana Workforce Comm'n*, 713 Fed. Appx. 242, 246 (5th Cir. 2017) (IIED claim dismissed on 12(b)(6) motion where the employee alleged her supervisory authority was undermined, that she was passed over for a promotion, and her supervisors discussed an "inappropriate case note" with her); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 515 (5th Cir.1994); *Nicholas, supra* (employer's arbitrary and compassionless decision to single employee out from his peers for corrective review does not support IIED claim).

## Conclusion

As instructed by *Iqbal*, the court has accorded no weight to the conclusory allegations set forth in Plaintiff's complaint. *See Iqbal, supra*. Plaintiff's remaining allegations contain facts sufficient to confer plausibility only upon her claims for discrimination/discriminatory discharge.

Accordingly,

IT IS RECOMMENDED that Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 8] be GRANTED IN PART and that Plaintiff's hostile work environment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and 42 U.S.C. § 1981, plus her state law claim for intentional infliction of emotional distress be DISMISSED WITH PREJUDICE. FED. R. CIV. P. 12(b)(6).

IT IS FURTHER RECOMMENDED that the Rule 12(b)(6) motion to dismiss [doc. # 8] otherwise be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within

fourteen (14) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he or she makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this **22nd day of December, 2022**.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE